# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIM D. W.[1] <br><br> Plaintiff, <br><br> v. <br><br> ANDREW SAUL,[2] Commissioner of Social Security, <br><br> Defendant. | Case No. 2:19-cv-01689-AFM <br><br> **MEMORANDUM OPINION AND ORDER AFFIRMING DECISION OF COMMISSIONER** |

Plaintiff filed this action seeking review of the Commissioner's final decision denying his application for supplemental security income benefits. In accordance with the Court's case management order, the parties have filed briefs addressing the merits of the disputed issues. This matter is now ready for decision.

///

///

---

[1] Plaintiff's name has been partially redacted in accordance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul, Commissioner of the Social Security Administration, is substituted as the proper defendant in this action. See Fed. R. Civ. P. 25(d).

## BACKGROUND

On February 9, 2011, Plaintiff applied for disability insurance benefits and supplemental security income, alleging disability beginning December 1, 2007. On January 8, 2013, Administrative Law Judge ("ALJ") Dean Yanohira found that Plaintiff suffered from the severe impairments of dysthymic disorder, delusion disorder, paranoid personality disorder, history of asthma, paranoid delusional disorder, and borderline intellectual functioning. After considering the record, ALJ Yanohira determined that Plaintiff retained the residual functional capacity ("RFC") to perform a full range of work at all exertion levels but with the following non-exertional limitations: limited to unskilled simple repetitive tasks, only incidental work-related interaction with coworkers and supervisors, and no interaction with the general public. Relying on the testimony of the vocational expert ("VE"), ALJ Yanohira determined found that Plaintiff could perform work existing in significant numbers in the national economy, including the occupations of cleaner II, laundry worker II, and hand packager. Accordingly, ALJ Yanohira concluded that Plaintiff was not disabled. (Administrative Record ("AR") 195-231, 236-246.) The Appeal's Council denied review. (AR 232-251.)

On May 1, 2015, Plaintiff filed a new application for supplemental security income benefits, again alleging that he became disabled on December 1, 2007. Plaintiff's application was denied. (AR 275-281, 341-349.) A hearing took place on September 11, 2017 before ALJ Evelyn M. Gunn. Plaintiff, who was represented by an attorney, testified at the hearing, as did a VE. (AR 181-194.) In a decision dated December 14, 2017, ALJ Gunn noted that the prior decision triggered a presumption of continuing non-disability and found that Plaintiff had failed to overcome that presumption by showing changed circumstances. In particular, ALJ Gunn rejected Plaintiff's allegation that his mental impairment had worsened. Rather, she concluded that the totality of the evidence – including both the new medical records and the medical records related to his mental condition at the time the prior ALJ

decision was issued – did not establish that Plaintiff's impairments had worsened. Further, the medical evidence did not reflect that Plaintiff suffered from any new impairment. In her decision, ALJ Gunn found Plaintiff suffered from the same medically severe impairments – namely, dysthymic disorder, delusion, disorder, paranoid personality disorder, paranoid delusional disorder, and borderline intellectual functioning. She concluded that Plaintiff retained the RFC to perform a full range of work at all exertional levels with the following non-exertional limitations: can understand and remember simple instructions to complete, simple, repetitive tasks; works better with things than with people; and can have no public contact. Relying on the testimony of the VE, the ALJ found that Plaintiff was capable of performing work that existed in significant numbers in the national economy, including the occupations of automatic machine attendant, laundry worker II, and janitor. Accordingly, ALJ Gunn determined Plaintiff was not disabled. (AR 30-39.)

The Appeals Council denied Plaintiff's request for review (AR 1-7), rendering the ALJ's decision the final decision of the Commissioner.

**DISPUTED ISSUES**

1. Whether ALJ Gunn erroneously failed to include a limitation to "only incidental work-related interaction with coworkers and supervisors" as assessed by ALJ Yanohira.

2. Whether ALJ Gunn properly considered the opinion of consultative examiner, Rashin D'Angelo, Ph.D.

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). Substantial evidence means "more than a mere scintilla" but less than a preponderance. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Lingenfelter v. Astrue*, 504 F.3d

1028, 1035 (9th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. This Court must review the record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Lingenfelter*, 504 F.3d at 1035. Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

## DISCUSSION

### 1. Whether the ALJ erred in assessing Plaintiff's RFC

The principles of res judicata apply to administrative decisions. *Chavez v. Bowen*, 844 F.2d 691, 693 (9th Cir. 1988). Thus, an ALJ's determination that a claimant is not disabled creates a presumption that the claimant continued to be able to work after that date. *Vasquez v. Astrue*, 572 F.3d 586, 597 (9th Cir. 2009). An ALJ's findings cannot be reconsidered by a subsequent ALJ unless the claimant shows "changed circumstances" – that is, new and material information not presented to the first judge. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1173 (9th Cir. 2008); *Lester v. Chater*, 81 F.3d 821, 827 (9th Cir. 1995). Following *Chavez*, the Social Security Administration ("SSA") adopted SSR 97-4(9) to explain how it would apply *Chavez* within the Ninth Circuit. Pursuant to the ruling, an ALJ must apply a presumption of continuing non-disability, which a claimant may rebut "by showing a 'changed circumstance' affecting the issue of disability with respect to the unadjudicated period." SSR 97-4(9), 1997 WL 742758, at *3. "Changed circumstances" include the existence of a new impairment not considered in the previous application, a change in the claimant's age, or an increase in the severity of the claimant's impairment. *See Lester*, 81 F.3d at 827; *Chavez*, 844 F.2d at 693; *see also* SSR 97-4(9).

Plaintiff contends that despite invoking the *Chavez* presumption, ALJ Gunn erroneously failed to include in her RFC the prior ALJ's limitation to "only incidental

4

work-related interaction with coworkers and supervisors." (ECF No. 22 at 9-10.) The Commissioner contends that ALJ Gunn's formulation of Plaintiff's limitations in social interaction is substantively the same as ALJ Yanohira's. According to the Commissioner, ALJ Gunn simply articulated the restriction in a slightly different way. That is, instead of limiting Plaintiff to "incidental interaction with coworkers and supervisors," ALJ Gunn limited him to occupations involving working primarily with things rather than people. (ECF No. 25 at 4.) The Commissioner argues that "this is a distinction without a difference," because "jobs that primarily involve working with things do not involve extensive interaction with coworkers or supervisors." (ECF No. 25 at 4.)

The Court agrees with the Commissioner. A fair reading of ALJ Gunn's decision makes it clear that she intended to mirror the conclusions of the prior ALJ. Further, construing the restriction to work "primarily involving things rather than people" as equivalent to "incidental interaction with coworkers and supervisors" is supported by case law. Courts have concluded that restricting a claimant to working "primarily with things, rather than people" fairly accounts for a moderate limitation in interacting with coworkers and supervisors. *See Carson v. Colvin*, 2016 WL 2660202, at *5 (D. Or. May 10, 2016) (ALJ's limitation to "work with things rather than people" adequately accounted for physician's opinion that plaintiff was moderately limited in interacting with coworkers, the public, and supervisors); *Peterson v. Astrue*, 2008 WL 5169117, at *3 (C.D. Cal. Dec. 8, 2008) (ALJ's restriction to "working primarily with things, rather than people" was consistent with, and effectively incorporated, physician opinion that plaintiff could only occasionally interact with public and supervisors). Thus, the Court concludes that the two RFC determinations were materially the same, and the use of a different phrase did not violate the rule in *Chavez*. *See Draiman v. Berryhill*, 2018 WL 895445, at *5 (C.D. Cal. Feb. 13, 2018) (RFC determinations of the first and second ALJ were "materially

the same," so any minor difference in the latest RFC determination did not rise to the level of legal error under *Chavez*).

In his Memorandum in Support of the Complaint, Plaintiff does not argue that ALJ Gunn's restrictions related to social interaction actually differ in any substantive way from ALJ Yanohira's restrictions. Rather, the crux of Plaintiff's argument is his contention that "the question of whether incidental contact with supervisors includes the ability to respond appropriately to criticism from supervisor is unanswered in the prior decision and requires address by the Commissioner now." (ECF No. 22 at 9-10.) In support of this contention, Plaintiff cites to Social Security Administration's Program Operations Manual System ("POMS") § DI 25020.010(B)(2)(c), (3)(k). That section recognizes that "the ability to accept instruction and respond appropriately to criticism from supervisors" as a mental ability needed for any job and a "critical" ability for performing unskilled work. (ECF No. 22 at 9-10.)

Plaintiff's argument fails for two reasons. To begin with, it is essentially a belated challenge to ALJ Yanohira's 2013 decision. More critically, it lacks an evidentiary basis. Plaintiff has not alleged that he lacks the ability to accept instruction or respond appropriately to criticism from supervisors and has not identified any medical opinion or other evidence in the record suggesting that he is so precluded. Rather, the only evidence Plaintiff discusses is Dr. D'Angelo's opinion that Plaintiff "would have moderate difficulties in accepting instructions from supervisors and in interacting with coworkers and the public." (*See* AR 452.) Dr. D'Angelo did not provide a custom definition for a "moderate" limitation, so he presumably used that term consistently with the definition found in the relevant SSA form (HA-1152), which defines a moderate limitation as "more than a slight limitation in this area but the individual can still function satisfactorily." *Turner v. Colvin,* 2015 WL 5708476, at *3 (C.D. Cal. Sep. 29, 2015) (in absence of custom definition, court presumed that physician used term in accordance with relevant form definition meaning "moderate limitation in this area but the individual is still able to

function satisfactorily"), *aff'd sub nom., Turner v. Berryhill,* 693 F. App'x 722 (9th Cir. 2017); *Arriola v. Astrue*, 2008 WL 4926961, at *4 (C.D. Cal. Nov. 14, 2008) ("the accepted meaning of the term 'moderate'" defines term as "more than a slight limitation in this area but the individual is still able to function satisfactorily").

In his Reply, Plaintiff offers a slightly different argument, asserting that ALJ Gunn's failure to include a limitation to "incidental work-related interaction with coworkers and supervisors" rendered the VE's testimony invalid. According to Plaintiff, there is no evidence suggesting that the occupations identified by the VE involve only incidental work-related interaction with coworkers/supervisors and no interaction with the public. (ECF No. 26 at 2-3.) This argument fails because, as set forth above, the ALJ's formulation of an RFC involving working primarily with things, not people, adequately expressed Plaintiff's moderate limitations in interacting with coworkers and supervisors. *See Peterson*, 2008 WL 5169117, at *3 ("the ALJ limited plaintiff to working primarily with things, rather than people, which would in turn substantially limit plaintiff's interaction with anyone-including a supervisor"). In addition, the ALJ explicitly included a separate restriction against any contact with the public. (*See* AR 191.) Thus, the ALJ's hypothetical took into account all of Plaintiff's limitations.

Furthermore, Plaintiff's argument is belied by the Dictionary of Occupational Titles ("D.O.T.") itself. The 5th digit of the D.O.T. occupation code corresponds to worker's ability to function in relation to people, and the number eight is the lowest level of interaction with people possible. As a result, to the extent that the ALJ erred in failing to include a more specific limitation on Plaintiff's contact with coworkers and supervisors, it was inconsequential to the outcome of the ALJ's final disability determination. *See Kathleen C. v. Berryhill*, 2019 WL 1002497, at *3 (C.D. Cal. Mar. 1, 2019) (citing *Hann v. Colvin*, 2014 WL 1382063, at *23 (N.D. Cal. Mar. 28, 2014) (finding ALJ's error in omitting limitation in contact with supervisors harmless where jobs identified by VE involved "the lowest level of interaction with people"

according to their DOT occupational codes)). Finally, as the Commissioner points out, the VE in the prior disability determination specifically identified the occupation of laundry worker II as one Plaintiff could perform even with the more specific limitation to only "incidental interaction" with coworkers and supervisors. (AR 228-229.)

### 2. The ALJ's consideration of Dr. D'Angelo's opinion

Plaintiff contends that the ALJ failed to properly consider Dr. D'Angelo's findings and opinions. Plaintiff appears to make two separate arguments in support of this contention. First, Plaintiff argues that Dr. D'Angelo's opinions, and in particular his opinion that Plaintiff would have moderate difficulty accepting instructions from supervisors, constitute evidence of changed circumstances rebutting the presumption of continuing non-disability. Second, Plaintiff argues that the ALJ failed to provide specific and legitimate reasons for rejecting Dr. Angelo's opinion. (ECF No. 22 at 10-15; ECF No. 26 at 3-5.)

Dr. D'Angelo conducted a psychiatric evaluation of Plaintiff in December 2015. A mental status examination revealed Plaintiff to be cooperative, his eye contact was fair, and his manner was guarded and suspicious. Plaintiff's speech was fluent, his mood was irritable, and his affect was blunted. He demonstrated looseness of associations and disorganized thinking, but his thought processes were linear and goal directed. Plaintiff reported auditory hallucinations and paranoia. He was able to register three out of three items, but unable to perform serial threes or sevens. His abstract thinking, fund of knowledge, insight and judgment were intact. (AR 449-451.)

Dr. D'Angelo diagnosed Plaintiff with schizophrenia, paranoid type. In Dr. D'Angelo's opinion, Plaintiff had mild limitations in performing simple and repetitive tasks, and moderate limitations in the following areas: performing detailed and complex tasks, performing work activities on a consistent basis without special and additional supervision; completing a normal workday and work week, accepting

instructions from supervisors and interacting with coworkers and with the public, and handling the usual stresses, changes and demands of gainful employment. Dr. D'Angelo further opined that if Plaintiff remained compliant with treatment plan, his symptoms would improve. (AR 452.)

Treatment records reveal that in 2016, Plaintiff received therapy based upon his symptoms of delusions, paranoia, trouble sleeping, auditory hallucinations, and anxiety. Plaintiff was prescribed Seroquel, and later his medication was changed to Abilify. The severity of Plaintiff's symptoms waxed and waned. He frequently reported non-compliance with medication. (AR 506-515, 518-519, 521-531-557.) In 2017, Plaintiff refused psychotropic medication, complaining of side effects. (AR 566; *see* AR 550-551.)

Plaintiff also cites medical evidence submitted for the first time to the Appeals Council. Those records indicate that Plaintiff called his therapist in May 2017. His mood was noted to be calm and cooperative. (AR 44.) During a therapy session in July 2017, Plaintiff stated that he did not want to continue treatment with Abilify because of loss of appetite. Plaintiff's mental status examination was normal except for anxious mood. (AR 45-46.) He subsequently received prescriptions for Latuda, Remeron, and Vistaril. (AR 49-50.) In July 2017, Plaintiff's mood was anxious, but his affect was appropriate; he was alert, coherent, cooperative, fully oriented, and without psychotic or aggressive behaviors. (AR 46.) In August 2017, Plaintiff appeared for a medication management visit. He was stable, appropriate, cooperative, alert, oriented, calm, and coherent. He reported that he had not been taking his medication because he was "busy." Since stopping his medication, he continued to be bothered by racing thoughts, voices, paranoia, and poor sleep. (AR 50.) In September 2017, Plaintiff reported his symptoms were stable and his sleep was improved. He indicated that he had run out of medication a week prior. (AR 54.) In October 2017, Plaintiff complained of worsening symptoms, and his medications were increased. (AR 57.) In November 2017, Plaintiff's compliance with medication

was poor, and Plaintiff indicated that without the medication his symptoms returned. Plaintiff expressed dissatisfaction with his current medications. Zyprexa was added to Plaintiff's prescribed medications. (AR 60-61.)[3]

Other than the 2017 records that were submitted to the Appeals Council, ALJ Gunn considered the foregoing medical evidence and concluded that it did not reveal that Plaintiff's mental impairment had worsened since the prior ALJ's decision. (AR 30, 33-36.) Plaintiff's mere disagreement with this finding is insufficient to satisfy his burden of demonstrating changed circumstances. While Plaintiff summarizes the new evidence, he fails to point to any specific medical evidence supporting his allegation that his mental condition worsened. The Court's comparison of the new evidence and the evidence discussed in ALJ Yanohira's 2013 decision supports the contrary conclusion.

In summarizing the medical evidence, ALJ Yanohira noted that Plaintiff had a history of mental health treatment beginning in 2010; he suffered from paranoid delusions and hallucinations; he was diagnosed with paranoid delusional disorder, delusional disorder, paranoid personality disorder, and dysthymic disorder; he obtained therapy and counseling; he was prescribed psychotropic medication, including Risperdal; and his IQ and Wechsler scores reflected Borderline Intellectual Functioning. (AR 241-242.) In addition, the 2013 decision took into account the opinion of the State agency medical consultant that Plaintiff was moderately limited in his ability to understand, remember, and carry out detailed instructions; his ability to interact appropriately with the general public; his ability to respond appropriately to changes in the workplace; his ability to maintain social functioning; and his ability maintaining concentration, persistence or pace. (AR 242.) Comparing the new

---

[3] The Commissioner concedes that the Court properly considers this new evidence in determining whether the ALJ's decision was supported by substantial evidence. (ECF No. 25 at 5-6, citing *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1163 (9th Cir. 2012).)

evidence submitted by Plaintiff with the medical evidence reviewed by the ALJ in 2013 reveals that Plaintiff's mental impairment was essentially the same.

Rather than explain how any treatment notes made during therapy or any other evidence shows that his mental condition worsened, Plaintiff focuses on Dr. D'Angelo's opinion that Plaintiff would be moderately limited in accepting instructions from supervisors and interacting with coworkers and the public. But standing alone, a new opinion regarding functional limitations that is based upon unchanged medical evidence does not constitute evidence of a worsening condition. If that were true, then a claimant who found a medical expert with a different opinion would be entitled to a new disability determination even though the underlying medical evidence did not change. In any event, ALJ Gunn implicitly construed Dr. D'Angelo's opinion as not significantly different than the prior opinion evidence. As she noted, the State agency psychologist reviewing the file, including Dr. D'Angelo's opinion, concluded that Plaintiff's mental impairment had not worsened since the prior ALJ decision. (AR 36, citing AR 268-269.)[4]

Furthermore, and contrary to Plaintiff's suggestion, ALJ Gunn did not purport to reject any of Dr. D'Angelo's opinions. Rather, she attributed great weight to Dr. D'Angelo's opinion that Plaintiff would have mild to moderate mental limitations. (AR 36, citing AR 452-453.) As set forth above, those moderate limitations were fairly encompassed by the ALJ's RFC. The ALJ was not required to provide reasons for rejecting an opinion which she effectively adopted. *See Turner*, 2015 WL 5708476, at *3 (ALJ was not required to give specific and legitimate reasons for "supposedly rejecting" physician's opinion of moderate impairment when such impairment would not impose additional limitations in RFC).

In sum, ALJ Gunn's finding that Plaintiff's condition was not materially different from his condition at the time of the first ALJ's decision is supported by

---

[4] In fact, the State Agency physician attributed great weight to Dr. D'Angelo's opinion. (AR 266.)

substantial evidence. Therefore, she properly applied res judicata to the prior ALJ's findings and conclusions. *See Miglioretto v. Colvin*, 674 F. App'x 667, 669 (9th Cir. 2017) (ALJ "properly determined that neither [plaintiff's] new nor existing impairments altered the original RFC, and that there had been no legally significant change in age category, so as to overcome the presumption of continuing non-disability"); *Lyle v. Sec'y of Health & Human Servs.*, 700 F.2d 566, 567-568 (9th Cir. 1983) (the ALJ properly applied res judicata where he "considered the new medical evidence and found that it demonstrated no change in [the claimant's] physical condition from the condition that had existed" at the date of the prior final decision and therefore reaffirmed the prior ALJ's finding that the claimant was not restricted from performing light work); *Carbajal v. Berryhill*, 2017 WL 2603300, at *11 (C.D. Cal. June 15, 2017) ("Taken together, there is substantial evidence in the record to support the ALJ's finding that Plaintiff has not shown material 'changed circumstances' sufficient to overcome the *Chavez*/res judicata presumption of continuing nondisability, and to support the finding that Plaintiff can do other work."), *appeal dismissed,* 2017 WL 5591536 (9th Cir. Oct. 5, 2017).

**ORDER**

For the foregoing reasons, IT IS ORDERED that Judgment be entered affirming the decision of the Commissioner and dismissing this action with prejudice.

DATED: 2/20/2020

_____
ALEXANDER F. MacKINNON
UNITED STATES MAGISTRATE JUDGE

12